**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HUNTERS UNITED FOR** | : | |
| **SUNDAY HUNTING, et al.,** | : | |
| **Plaintiffs** | : | **No. 1:13-cv-01939** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **PENNSYLVANIA GAME** | : | |
| **COMMISSION, et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Defendants, the Pennsylvania Game Commission, Pennsylvania Game Commission

Executive Director Carl Roe, and Pennsylvania Attorney General Kathleen Kane, move the

Court to dismiss Plaintiffs Kathy Davis and Hunters United for Sunday Hunting's amended

complaint.  (Doc. No. 10.)  For the reasons that follow, the Court will grant Defendants' motion.

**I.      BACKGROUND**[1]

This case concerns the constitutionality of Section 2303(a) of the Pennsylvania Game and

Wildlife Code, which makes it "unlawful for any person to hunt for any furbearer or game on

Sunday."  34 Pa. Stat. Ann. § 2303(a).  Plaintiffs challenge the restriction as unconstitutional

under the First, Second, and Fourteenth Amendments to the United States Constitution, as well

as under state law, and seek an order permanently enjoining Defendant Pennsylvania Game and

Wildlife Commission from enforcing Section 2303(a).  (Doc. No. 8 at 14.)

As set forth in their complaint, Plaintiffs are currently permitted to hunt furbearer, big

game, and small game on public and private lands within the Commonwealth of Pennsylvania

---

[1] The following background is taken from the allegations of Plaintiffs' amended
complaint.  (Doc. No. 8.)

during established seasonal periods, with the exception of Sundays.  (Id. ¶ 20.)  Big game

consists of white-tailed deer, black bear, elk and wild turkey, whereas small game consists of

woodcock, rabbit, pheasant, northern bobwhite, quail, ruffled grouse, groundhog, and squirrel.

(Id. n.1-2.)  However, by statute, foxes, coyotes, crows, and feral hog are excepted from the

Sunday hunting restriction, meaning that these animals may be taken on Sunday.[2]  (Id. ¶ 21

(citing 34 Pa. Stat. Ann. § 2303(b)(1)-(2).)  Non-commercial hunting grounds[3] are also excepted

from the Sunday hunting restriction, meaning that furbearer and game may be taken on non-

commercial hunting grounds on Sunday.  (Id. ¶ 22 (citing 34 Pa. Stat. Ann. § 2303(b)(3).)  Apart

from these exceptions, however, Section 2303(a) prohibits Plaintiffs from taking furbearer and

game on Sundays.  If an individual violates Section 2303(a), he or she potentially faces

prosecution of a summary offense of the fifth degree, and, adverse administrative action against

his or her hunting license.  (Id. ¶ 26.)

On July 16, 2013, Plaintiffs filed a complaint in this Court, seeking declaratory relief and

a permanent injunction enjoining Defendant Pennsylvania Game Commission from enforcing

Section 2303(a).  (Doc. No. 1.)  Defendants moved to dismiss the complaint under Federal Rules

of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that the Court lacked jurisdiction over

the claims, and, that Plaintiffs' complaint failed to state a claim upon which relief may be

granted.  (Doc. No. 5.)  Defendants also submitted they were entitled to Eleventh Amendment

---

[2] Plaintiffs also submit that deer and elk causing damage may be taken by farmers on their private property on all days, including Sundays, and that feral swine or wild hogs may be taken on all days, including Sunday.  (Doc. No. 8 ¶ 24(a)-(b).)

[3] Non-commercial regulated hunting grounds must be used solely by the "permittee only or guests with no fee or any charge for the use of the area of the birds." 34 Pa. Stat. Ann. § 2928(b)(2).  Regulated hunting grounds require a "minimum of 100 acres of land, or land and water combined." Id.(a).

immunity, and that Pennsylvania Attorney General Kane should be dismissed as an improper

party-defendant.  Plaintiffs subsequently filed an amended complaint, which Defendants again

moved to dismiss.  (Doc. Nos. 8, 10.)  The motion has been fully briefed and is now ripe for

disposition.

## II.     STANDARD OF REVIEW

### A.     Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to move for dismissal of a

complaint on the grounds that a court lacks subject-matter jurisdiction over the claims.  A motion

to dismiss a case for lack of standing is properly brought under Rule 12(b)(1), because standing

is a jurisdictional matter.  Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007).  When

evaluating a Rule 12(b)(1) motion, a court must first determine whether the movant presents a

facial or factual attack.  In re Schering Plough Corp. Intron/Temodar Consumer Class Action,

678 F.3d 235, 243 (3d Cir. 2012) (citation omitted).  A facial challenge contests the sufficiency

of the pleadings, meaning a court must consider the allegations of the complaint in the light most

favorable to the plaintiff.  Gould Elec., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000).

By contrast, when reviewing a factual attack, a court may consider evidence outside the

pleadings.  Id. (citation omitted).  Although Defendants do not specify whether their challenge is

facial or factual, their arguments in support of dismissal under Federal Rule 12(b)(1) assume that

Plaintiffs' allegations are true, and do not reference any evidence outside the pleadings.  Thus

the Court will treat Defendants' motion to dismiss for lack of standing as a facial challenge.

Pursuant to Rule 12(b)(1), the Court must accept as true all material allegations set forth

in the complaint, and must construe those facts in favor of the non-moving party.  Ballentine,

486 F.3d at 810 (citations omitted).  When evaluating whether a complaint adequately pleads the elements of standing, a court applies the same standard of review as on a Rule 12(b)(6) motion to dismiss for failure to state a claim.  In re Schering Plough, 678 F.3d at 243 (citation omitted).[4] Accordingly, a plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the rights he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).  At the pleadings stage, it is the plaintiffs' burden to establish standing.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  Although general factual allegations of injury resulting from the defendant's conduct may suffice, the complaint must still clearly and specifically set forth facts sufficient to satisfy Article III's standing requirement.  Reilly v. Ceridian Corp., 664 F.3d 38, 41 (3d Cir. 2011) (citation and internal quotation marks omitted).

### B.      Federal Rule of Civil Procedure 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, if true, demonstrate a plausible right to relief.  Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

---

[4] See Baldwin v. Univ. of Pittsburgh Med. Ctr., 636 F.3d 69, 73 (3d Cir. 2011) ("A dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim.")

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  The Court's inquiry is guided by recent developments in pleading standards, which commenced with the United States Supreme Court's announcement of the "plausibility" standard in Bell Atlantic Corporation v. Twombly.  550 U.S. at 557; see also Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Under Twombly and Iqbal, pleading requirements have shifted from simple notice pleading under Conley's "no set of facts" standard to a "more heightened form of pleading."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  Now, to prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible.  Id.  Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim, (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth, and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement for relief."  See Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

## III.     DISCUSSION

Defendants move the Court to dismiss Plaintiffs' amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that the Court lacks subject-matter jurisdiction because Plaintiffs do not have standing; and, that Plaintiffs' amended complaint fails to state a

claim upon which relief may be granted.  (Id.)  Defendants further argue that were Plaintiffs to

prevail on any of their claims, Defendants are entitled to Eleventh Amendment immunity, and

that Defendant Pennsylvania Attorney General Kane should be dismissed as an improper party-

defendant.  The Court begins with Count One of Plaintiffs' amended complaint, which pertains

to Plaintiffs' purported Second Amendment right to hunt.

### A.    Count One: Second Amendment to the United States Constitution

Plaintiffs allege that Section 2303(a)'s restriction on Sunday hunting violates their rights

under the Second Amendment to the United States Constitution.  (Doc. No. 8 ¶ 43.)  Defendants

move to dismiss this claim on the grounds that Plaintiffs do not have a "legally protected right to

hunt," and therefore Plaintiffs cannot allege they have suffered an invasion of a legally-protected

interest sufficient to confer standing.  (Doc. No. 11 at 10.)  Plaintiffs acknowledge that no legal

precedent establishes a constitutional right to hunt, but argue that the Supreme Court's recent

decisions in Heller v. District of Columbia and McDonald v. City of Chicago represent

persuasive authority that the Second Amendment has been extended to embrace the right to hunt.

It is on this basis that Plaintiffs maintain Count One articulates injury to a legally-protected

interest.  (Doc. No. 14 at 9.)

The Second Amendment provides: "[a] well regulated Militia, being necessary to the

security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

U.S. Const. amend. II. When reviewing laws alleged to burden conduct protected by the Second

Amendment, a court must undertake a two-step analysis.  See United States v. Marzzarella, 614

F.3d 85, 89 (3d Cir. 2010).  First, a court must ask whether "the challenged law imposes a

burden on conduct falling within the scope of the Second Amendment's guarantee."  Id. (noting

that the right protected by the Second Amendment is subject to "several other valid limitations,"

such as "longstanding prohibitions" imposed on possession by felons and the mentally ill, as

well as restrictions forbidding the carrying of arms in sensitive places).  If the challenged law

does not reach protected activity, a court's inquiry is complete.  Id. at 90.  If the challenged law

restricts protected activity, a court must evaluate the law under some form of means-based

scrutiny.  Id.

Although the Court acknowledges that "much of the scope of the right remains

unsettled," see Marzzarella, 614 F.3d at 92, nothing in McDonald or Heller supports Plaintiffs'

expansive view of controlling caselaw related to the Second Amendment.[5]  In both McDonald

and Heller, the Supreme Court underscored that the "core" of the Second Amendment is the right

of "law-abiding, responsible citizens to use arms in defense of hearth and home."  See Heller v.

Dist. of Columbia, 554 U.S. 570, 635 (2008); see also Drake v. Filko, 724 F.3d 426, 430 (3d Cir.

2013) ("It remains unsettled whether the individual right to bear arms for the purpose of self-

defense extends beyond the home."); Kachalsky v. Cnty. of Westchester, 701 F.3d 81, 89 (2d

Cir. 2012) ("Second Amendment guarantees are at their zenith within the home.").  The Supreme

Court held that individual self-defense is the "central component" of the Second Amendment

right in Heller, and their historical review of the Second Amendment in McDonald v. City of

Chicago framed the right as tied to self-defense.[6]  130 S.Ct. 3020, 3036 (2010) (citation omitted).

---

[5] In a recent challenge to New Jersey's Handgun Permit law, the Third Circuit "decline[d] to definitively declare that the individual right to bear arms for the purpose of self-defense extends beyond the home . . . . [w]e do, however, recognize that the Second Amendment's right to bear arms may have some application beyond the home, . . . . [but] we refrain from answering this question definitively."  Drake, 724 F.3d at 431.

[6] McDonald, 130 S. Ct. at 3036 (noting that the 1689 English Bill of rights "explicitly protected a right to keep arms for self-defense"); id. at 3038 (concluding that although "the fear

By contrast, "[t]he recreational sport of hunting has not been recognized as a constitutionally protected liberty or property interest by state or federal law."[7] Pa. Game Comm'n v. Marich, 666 A.2d 253, 256 (Pa. 1995).  Although Plaintiffs cite Justice Scalia's observation in Heller that "[t]he prefatory clause [of the Second Amendment] does not suggest that preserving the militia was the only reason Americans valued the ancient right; most undoubtedly thought it even more important for self-defense and hunting," Heller, 554 U.S. at 599, this oblique reference to hunting does not create a nexus between the Second Amendment and a right to recreational hunting.  Indeed, Plaintiffs' use of this language ignores the context of the Supreme Court's opinion, which actually ties the codification of the Second Amendment to the populace's fear that the federal government would destroy the citizen's militia by taking away their arms, not that the federal government would regulate recreational hunting.[8]

---

that the National Government would disarm the universal militia [...] had largely faded as a popular concern, [] the right to keep and bear arms was highly valued for purposes of self-defense"); id. at 3041 ("[O]ne of the core purposes of the Civil Rights Act of 1866 and of the Fourteenth Amendment was to redress the grievances of freedman who had been stripped of their arms and to affirm the full and equal right of every citizen to self-defense.") (citation and quotation marks omitted); id. at 3041 ("Even those who thought the Fourteenth Amendment unnecessary believed that blacks, as citizens, have an equal right to protection, and to keep and bear arms for self-defense.") (citation and quotation marks omitted).

[7] This is consistent with the Supreme Court's opinion in Baldwin v. Fish & Game Commission of Montana, in which the Supreme Court concluded that elk-hunting was not a fundamental right in the context of the Privileges and Immunities Clause.  436 U.S. 371, 388 (1978); see also Minnesota ex rel. Hatch v. Hoeven, 456 F.3d 826, 834 (8th Cir. 2006) ("Equality in access to North Dakota waterfowl does not constitute a fundamental right basic to the maintenance or well-being of the Union.").

[8] Heller, 554 U.S. at 599 ("But the threat that the new Federal Government would destroy the citizens' militia by taking away their arms was the reason that right – unlike some other English rights – was codified in a written Constitution.").

Because the Court can find no legal support for Plaintiffs' argument that Second Amendment protections extend to recreational hunting, the Court declines to find that Section 2303(a) restricts conduct protected by the Second Amendment and need not proceed to evaluate it under any means-based test.  See Marzzarella, 614 F.3d at 90.  Moreover, as Plaintiffs' complaint fails to allege injury-in-fact to any "legally protected interest," the Court finds that Plaintiffs lack standing, and will dismiss Count One for lack of subject-matter jurisdiction.[9]  See Sprint Commc'ns Co. v. APCC Servs., Inc., 554 U.S. 269, 273 (2008) (requiring a "concrete and particularized" invasion of a "legally protected interest" to confer standing).  The Court proceeds to Plaintiffs' equal protection claim.

## B.      Count Three: Fourteenth Amendment to United States Constitution

In Count Three of their amended complaint, Plaintiffs allege that Title 34 of the Pennsylvania Consolidated Statutes and the Pennsylvania Game Commission's regulations violate their right to equal treatment under the law, as Plaintiffs are "treated differently by Title 34 of the Pennsylvania Consolidated Statutes than other Pennsylvania citizens who are similarly situated," and "Title 34 . . . create[s] different classes of hunters; one class who are not permitted to hunt furbearer, big game and/or small game on Sunday and other classes that permit furbearer, big game and/or small game to be taken on Sundays."  (Doc. No. 8 ¶¶ 55-56.)  Defendants argue in their reply brief that the Court should dismiss Count Three because under the "minimal level

---

[9] Because the Court lacks subject-matter jurisdiction over the claim, it will not proceed to Defendants' argument that Count One fails to state a claim upon which relief may be granted, nor to Defendants' argument they are entitled to Eleventh Amendment immunity.  Moreover, because the Court finds that allowing Plaintiff to amend their Second Amendment allegations in Count One would be futile, the Court will deny Plaintiffs leave to amend.  See Phillips, 515 F.3d at 236 (citation omitted) ("[A] district court must permit a curative amendment, unless an amendment would be inequitable or futile.").

of scrutiny" that the Court must apply to Plaintiffs' Equal Protection Claim, "it is not difficult to accept that the General Assembly could have entirely rational reasons related to the management of game or conservation which support a distinction." (Doc. No. 15 at 6.)

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits a State from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "Its central tenet requires that States treat like cases alike but may treat unlike cases differently." Brian B. ex rel. Lois B. v. Com. of Pa. Dep't of Educ., 230 F.3d 582, 588 (3d Cir. 2000) (Roth, J., dissenting). When reviewing a claim that government action violates the Equal Protection Clause, the Court must first determine the correct standard of review. Donatelli v. Mitchell, 2 F.3d 508, 513 (3d Cir. 1993). In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental rights "must be upheld against equal protection challenge if there is any reasonably conceivable set of facts that could provide a rational basis for the classification." FCC v. Beach Comm'n, Inc., 508 U.S. 307, 313 (1993). This is referred to as rational basis review. Classifications that neither burden fundamental rights nor utilize suspect classes bear a strong presumption of validity, and those attacking the rationality of the legislative classification "have the burden to negative every conceivable basis which might support it." Id. at 315 (citation and quotation marks omitted). Under rational basis review, equal protection does not demand that a legislature or governing decisionmaker "actually articulate at any time the purpose or rationale supporting its classification." Id. Rather, a "legislative choice is not subject to courtroom fact-finding," and "may be based on rational speculation unsupported by evidence or empirical data." Id.

Because Section 2303(a) neither proceeds along suspect lines nor infringes fundamental rights, the Court must apply rational basis review. District courts in the Third Circuit have recognized "the perplexing situation" that occurs when a district court must apply rational basis review to a plaintiff's complaint when faced with a defendant's motion to dismiss. Brace v. Cnty. of Luzerne, 873 F. Supp. 2d 616, 630 (M.D. Pa. 2012) (citation and quotation marks omitted); Cradle of Liberty Council, Inc. v. City of Phila., No. 08-2429, 2008 WL 4399025, at *6 (E.D. Pa. Sept. 25, 2008). On the one hand, a court is considering a motion to dismiss, meaning that all inferences must be drawn in favor of the non-movant, and dismissal is only appropriate if the plaintiff's complaint fails to provide factual allegations sufficient to raise the complaint beyond the speculative level. See Phillips, 515 F.3d at 231. On the other hand, a court must defer to the government's classification.[10] Thus, "every benefit of the doubt goes to Plaintiff, but applying rational basis review, the Court must grant great deference to Defendant." Brace, 873 F. Supp. 2d at 630 (citation and quotation marks omitted).[11] "[T]o determine whether a rational basis exists at the motion to dismiss stage, a court may consider the defendant's motion, the plaintiff's complaint, and any other admissible documents." Id. at 630-31 (citation omitted); see also Cradle, 2008 WL 4399025 at *7 n.3.

---

[10] See Wroblewski v. City of Washburn, 965 F.2d 452, 460 (7th Cir. 1992) ("To survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications.").

[11] Put differently, although "[t]he rational basis standard . . . cannot defeat the plaintiff's benefit of the broad Rule 12(b)(6) standard," see Montayne Wissahickon Sch. Dist., 327 F. Supp. 2d 510, 520 (E.D. Pa. 2004) (citation omitted), meaning the Court must take as true all of the complaint's allegations and reasonable inferences that follow, the Court must likewise "apply the resulting 'facts' in light of the deferential rational basis standard." Wroblewski, 965 F.2d 452, 460 (7th Cir. 1992); see also Giarratano v. Johnson, 521 F.3d 298, 303 (4th Cir. 2008); C.M. ex rel. Marshall v. Bentley, No. 13-591, 2014 WL 1378432 at *22 n.22. (M.D. Ala. Apr. 8, 2014).

11

Plaintiffs allege that Section 2303(a) creates multiple classes of hunters because exceptions to the general Sunday hunting prohibition permit individuals to take "crow, foxes, coyotes, furbearer and feral hog" on Sundays, as well as furbearer and game on noncommercial regulated hunting grounds.  (Doc. No. 8 ¶¶ 21-22; ¶ 24.)  Taking Plaintiffs' allegations as true, the Court accepts Plaintiffs' argument that Section 2303(a), and its exceptions, create "different classes of hunters."  (Id. ¶¶ 57-58.)

Nevertheless, the Court finds that Plaintiffs fail to state an equal protection claim. Plaintiffs' conclusory allegation that "[t]here is no longer a rational basis for the difference in treatment between the various classes" cannot overcome the presumption of rationality the Court must accord to Section 2303(a), and, the readily apparent justifications for the statute advanced by Defendants in their reply brief.  Nor do Plaintiffs offer any competing factual allegations that would discredit Defendants' assertion that the "state legislature rationally could believe that, for reasons related to conservation or game management, certain wildlife may be hunted seven days a week and others should not" (Doc. No. 15 at 6-7); and, that "[t]he General Assembly reasonably could believe that more weekend hunting days would result in a greater harvest of certain wildlife for the simple reason that more hunters would be afield on two-day weekends." (Id. at 7.)   Balancing these straight-forward justifications against Plaintiffs' conclusory allegation that Section 2303(a) is without rational basis, the Court finds that Plaintiffs fail to state an equal protection claim and will dismiss Count Three with prejudice.

### C.      Count Five: First Amendment to the United States Constitution

Plaintiffs allege in Count Five that Section 2303(a) violates the First Amendment to the United States Constitution because it has a religious basis.  (Doc. No. 8 ¶ 81.)  Plaintiffs do not

specify whether their claim falls under the Establishment Clause or Free Exercise Clause, nor do they offer any arguments in support of their alleged injury-in-fact.  Defendants do not address Plaintiffs' claim under the First Amendment in their brief.  The Court cannot divine Plaintiffs' injury-in-fact from their allegation that "Defendants [sic] enforcement and prohibition on Sunday hunting no longer has a secular basis but instead a religious basis."  (Doc. No. 8 ¶ 80.) Plaintiffs' allegation that Section 2303(a) has a "religious basis" is a legal conclusion that the Court is not obliged to consider when evaluating whether Plaintiffs sufficiently allege an injury-in-fact.  See Gould, 220 F.3d at 176.  Plaintiffs' complaint does not contain any factual allegations concerning the ways in which the ban on hunting violates their religious beliefs or coerces them to participate in any state religion in violation of the First Amendment.  The Court therefore finds that Plaintiffs lack standing to pursue their First Amendment claim.

Moreover, even were Plaintiffs to offer any well-pleaded factual allegations that would support a finding they have standing to assert a First Amendment claim, the Court would nevertheless find that Plaintiffs have failed to state a claim upon which relief may be granted. Plaintiffs allege that "the secular reasons for Title 34 of the Pennsylvania Consolidated Statutes and the Commission are no longer applicable," and that Section 2303(a) has a "religious basis." (Doc. No. 8 ¶¶ 79-80.)  In their brief, Plaintiffs argue that "the restriction against Sunday hunting is a Blue Law, enacted for secular [sic] reasons, which is without rational and substantial relation to the intent of the legislation in modern times."  (Doc. No. 14 at 11.)  Although Plaintiffs allege "House Resolution 535 declared 2012 as the 'Year of the Bible' in Pennsylvania," Plaintiffs do not connect this factual allegation in any way to their claim that Section 2303(a) has a "religious basis" and violates the First Amendment.  See Morse v. Lower Merion Sch. Dist., 132 F.3d 902,

906 n.8 (3d Cir. 1997) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.") (citation and quotation marks omitted).

Assuming <u>arguendo</u> that Plaintiffs take the position that Section 2303(a) effectively forces them to observe predominant Christian religions by forbidding hunting on Sundays, the Supreme Court rejected a similar argument more than fifty years ago.  In <u>McGowan v. Maryland</u>, the Supreme Court upheld a Sunday closing law prohibiting the sale of certain merchandise passed by the Maryland legislature, finding that "[t]o say that the States cannot proscribe Sunday as a day of rest . . . solely because centuries ago such laws had their genesis in religion would give a constitutional interpretation of hostility to the public welfare rather than one of mere separation of church and State."  366 U.S. 420, 445 (1961); <u>see also</u> <u>Lynch v. Donnelly</u>, 465 U.S. 668, 710 (1984) (noting the "wholly secular goals – for instance, promoting goodwill and a common day of rest – that were found to justify Sunday Closing laws in <u>McGowan</u>").  Although Plaintiffs concede in Count Five that <u>McGowan</u> permits Sunday closure laws, Plaintiffs nonetheless allege that "[i]t is Petitioner's assertion that the Defendants [sic] enforcement and prohibition on Sunday hunting no longer has a secular basis but instead a religious basis."  (Doc. No. 8 ¶ 79.)  Because Plaintiffs do not supply any factual allegations supporting this assertion, the Court need not credit it.  <u>See</u> <u>Evancho v. Fisher</u>, 423 F.3d 347, 351 (3d Cir. 2005) (citations omitted).  For the foregoing reasons, the Court will dismiss Plaintiffs' First Amendment claim in Count Five against all Defendants.

**D.**      **Counts Two, Four, Five and Six: Plaintiffs' state law claims**

Plaintiffs' complaint alleges parallel claims under state law; namely, Section 2303(a)

14

violates their right to hunt under Article 1, Section 1 and Article 1, Section 21 of the Pennsylvania Constitution (Doc. No. 8 ¶ 52) (Count Two); their right to equal protection under Article 1, Section 1 and Article 1, Section 27 of the Pennsylvania Constitution (id. ¶ 69) (Count Four); their right to religious freedom under Article III, Section 32 of the Pennsylvania Constitution (id. ¶ 81) (Count Five); and, it violates the Pennsylvania Religious Freedom Protection Act (id. ¶ 91) (Count Six).

As discussed previously, the Court will dismiss all federal claims against all Defendants. A district court may decline to exercise supplemental jurisdiction over accompanying state law claims when it dismisses all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3).  When determining whether to exercise its discretion to hear any remaining state law claims, a court must take into account generally accepted principles of judicial economy, convenience, and fairness to the litigants.  Growth Horizons, Inc. v. Delaware Cnty., Pa., 983 F.2d 1277, 1284 (3d Cir. 1993); see Rossi v. Gemma, 489 F.3d 26, 39 (1st Cir. 2007) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit . . . will trigger the dismissal without prejudice of any supplemental state-law claims.") (citation and quotation marks omitted).  Because of the early stage of this action, the Court finds that the factors of judicial economy, convenience, and fairness to the litigants weigh in favor of declining to exercise jurisdiction over Plaintiffs' state law claims.  See Shaffer v. Bd. of Sch. Directors of Albert Gallatin Area Sch. Dist., 730 F.2d 910, 912 (3d Cir. 1984).  Accordingly, the Court will decline to exercise jurisdiction over Plaintiffs' accompanying state law claims in Counts Two, Four, Five, and Six, and dismiss them without prejudice to Plaintiffs' right to raise them in state court.  See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1986).

IV.     **CONCLUSION**

The Court will dismiss Plaintiffs' federal claims with prejudice, and dismiss Plaintiffs' state law claims without prejudice to Plaintiffs' right to raise them in state court.  An order consistent with this memorandum follows.